

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2002

# USA v. Goldin

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-1440

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Goldin" (2002). *2002 Decisions*. Paper 433.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/433

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NOS. 01-1440, 01-1442, 01-1443,
01-1445, 01-1446 and 01-4247


UNITED STATES OF AMERICA
v.
FRANCES GOLDIN, Appellant No.  01-1440
(D.C. No. 00-m-00139)


UNITED STATES OF AMERICA
v.
JANE JACKSON, Appellant No.  01-1442
(D.C. No. 00-m-00250)


UNITED STATES OF AMERICA
v.
MARCEY GAYER, Appellant No.  01-1443
(D.C. No. 00-m-00251)


UNITED STATES OF AMERICA
v.
CHARLES KISSINGER, Appellant Nos.  01-1445 & 01-4247
(D.C. No.  00-m-00253)


UNITED STATES OF AMERICA
v.
MITCHEL COHEN, Appellant No.  01-1446
(D.C. No. 00-m-00361)


On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Nos. 00-m-00139, 00-m-00250, 00-m-00251, 00-m-00253 & 00-m-00361)
District Judge:  Honorable Bruce W.  Kauffman


Argued May 23, 2002


BEFORE: MCKEE, STAPLETON and WALLACE, Circuit Judges


(Filed July 24, 2002)


Andrew F.  Erba
Williams, Cuker & Berezofsky
One Penn Center at Suburban Station

1617 J.F.K. Boulevard, Suite 800
Philadelphia, PA 19103-2030

       Attorneys for Appellant, Jane Jackson

Aaron Frishberg
116 West 111th Street
New York, NY 10032

       Attorney for Appellant, Marcey Gayer

Peter Goldberger  (Argued)
50 Rittenhouse Place
Ardmore, PA 19003-2276

       Attorney for Appellant, Mitchel Cohen and
       Lead Appellate Counsel for Consolidated
       Defendants-Appellants


Ronald L.  Kuby
740 Broadway, 5th Floor
New York, NY 10003

       Attorney for Appellant, Charles Kissinger

Jordan B.  Yeager
Boockvar & Yeager
714 Main Street
Bethlehem, PA 18018

       Attorneys for Appellant, Frances Goldin

Stefan Presser
American Civil Liberties Union
125 South Ninth Street, Suite 701
Philadelphia, PA 18018

       Attorneys for Amicus-appellant,
       ACLU  PA

Patrick L.  Meehan
United States Attorney
Richard W.  Goldberg (Argued)
Asst. United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-1250

       Attorneys for Appellee,
       United States of America

OPINION OF THE COURT

WALLACE, Circuit Judge:

Goldin, Jackson, Gayer, Kissinger and Cohen (Protesters) participated in a protest at the Liberty Bell Pavillion (Pavillion) in Independence National Historic Park on July 3, 1999, one of the busiest days of the year at the park.  The protest got out of control

and Park Rangers moved in to restore order. Protesters were arrested for refusing to obey the lawful order of a Park Ranger in violation of 36 C.F.R. 2.32(a)(2). Protesters were found guilty in a proceeding before a United States Magistrate Judge. Each protestor received the same sentence: one year probation with travel restricted to the federal district in which he or she resided, a $250.00 fine, and a $25 assessment.

Protesters appealed their convictions and sentences to the district court and, after affirmance, appealed to this court. The Magistrate Judge had jurisdiction under 18 U.S.C. 3401(a), the district court had appellate jurisdiction under 18 U.S.C. 3742(g), and we have jurisdiction over this timely filed appeal under 28 U.S.C. 1291. We affirm.

I.

Protesters first contend that the evidence was insufficient to prove that they committed the offense charged. We "review[] the sufficiency of the evidence in the light most favorable to the government and must credit all available inferences in favor of the government." United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998) (citation omitted). "We do not weigh evidence or determine the credibility of witnesses in making this determination." United States v. Beckett, 208 F.3d 140, 151 (3d Cir. 2000) (citation omitted).

Protesters' first insufficiency argument is that they were either not given an order or were not given an opportunity to comply. Kissinger, Goldin, and Cohen were arrested after they blocked a police van. All three were told to move, all three were given between twenty and thirty seconds to move, and all three refused.

Jackson was arrested after she rolled her motorized wheelchair past a police barricade. She was told to leave, refused to do so, and then demanded to be arrested. When viewed in the light most favorable to the government, the evidence was sufficient to show that Kissinger, Goldin, Cohen, and Jackson were given both an order to move and an opportunity to comply.

Gayer does not argue that she was not given an order or opportunity to move. Rather, she argues that the order she was given was not lawful because it was arbitrary. An order given under 36 C.F.R. 2.32(a)(2) must be "lawful." For an order to be lawful under the regulation, it must be 1) given in one of the circumstances outlined in section 2.32(a)(2) and 2) constitutional. The order Gayer received was given in a circumstance outlined in section 2.32(a)(2). Because the order was given after Gayer had interrupted a park service presentation and while she was preventing new tourists from accessing the Pavillion, it was given during another "activit[y] where the control of public movement and activities [was] necessary to maintain order and public safety." Id. Since the order Gayer received was given in one of the circumstances outlined in section 2.32(a)(2) and, as we conclude later, was constitutional, it was lawful.

Kissinger, Goldin, and Cohen also argue that the evidence at trial was insufficient to show that they were among those that blocked the police van. Viewed in the light most favorable to the government, the evidence especially the eye-witness testimony was sufficient to show that Kissinger, Goldin, and Cohen were amongst those that blocked the police van.

Protesters argue further that the evidence was insufficient to support their convictions because it did not show that there was an emergency at the time they were arrested. One of the provisions of 36 C.F.R. 2.32(a)(2) requires an order to be given during "emergency operations." Protesters suggest that the emergency had abated by 12:30 or 1:00 p.m. The videotape introduced at trial, though, showed that the Pavillion was blocked at 12:28 p.m. and that the last protesters were not removed from the Pavillion roof until 2:23 p.m. This was sufficient to show that an emergency existed during this period. Cohen, Goldin, and Kissinger were arrested at 1:31 p.m. Although Jackson was never arrested (only cited), she was told to leave the blockaded area and refused at approximately 1:08 p.m. Viewed in the light most favorable to the government, the evidence was sufficient to show that Cohen, Goldin, Kissinger and Jackson disobeyed a Park Ranger's order during "emergency operations." We have no need to decide whether Gayer's arrest occurred during emergency operations because, as we have already discussed, her arrest was authorized by another provision in 36 C.F.R. 2.32(a)(2).

II.

Protesters next argue that 36 C.F.R. 2.32(a)(2) is unconstitutional.

A.

Their first argument is that it violates the Due Process Clause of the Fifth Amendment because it is too vague.

> [T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

Kolender v. Lawson, 461 U.S. 352, 357 (1983) (citations omitted).

Protesters assert that the Regulation, unless confined to operations that are the equivalent of "firefighting or wild animal control operations" [Blue 34 n.24] is so unclear that it "encourages arbitrary and discriminatory enforcement" by the Park Rangers. Id. at 357. City of Chicago v. Morales, 527 U.S. 41 (1999), is the closest, most recent case from the Supreme Court on this subject. Morales involved an ordinance designed to prevent gang loitering on Chicago's streets. The ordinance empowered the Chicago Police to order groups of loiterers to disperse if an officer "reasonably believed" that one of the loiterers was a gang member. The ordinance did not prohibit the actual loitering; rather, it prohibited a loiterer's refusal to obey the dispersal order.

The Court struck down the ordinance because its definition of loitering "remaining in any one place with no apparent purpose" was so vague that it gave Chicago police "absolute discretion . . . to determine what activities constitute[d] loitering." Id.

36 C.F.R. 2.32(a)(2) is unlike the ordinance in Morales because it carefully confines a Park Ranger's authority to issue an order. For 36 C.F.R. 2.32(a)(2) to apply, the Ranger's order must be given

> during firefighting operations, search and rescue operations, wildlife management operations involving animals that pose a threat to public safety, law enforcement actions, and emergency operations that involve a threat to public safety or park resources, or other activities where the control of public movement and activities is necessary to maintain order and public safety.

Unlike the Chicago ordinance, where the police were empowered to order almost anyone standing in place anywhere in the city to disperse, a Park Ranger, under the regulation, may only give an order in a limited, rather narrow, set of circumstances. Two of those circumstances are relevant here: 1) "emergency operations that involve a threat to public safety or park resources" and 2) "other activities where the control of public movement and activities is necessary to maintain order and public safety." Id.

Unlike the Chicago ordinance's definition of loitering, 36 C.F.R. 2.32(a)(2) is not so unclear that it vests unbridled discretion in Park Rangers. An order given under the "emergency operations" provision, for example, must be given not only in "emergency operations," but in "emergency operations that involve a threat to public safety or park resources." What is more, an order given under the "public movement" provision may only be given if "necessary to maintain order and public safety." Id. Recognizing that "we can never expect mathematical certainty from our language," Hill v. Colorado, 530 U.S. 703, 733 (2000) (citation and quotation marks omitted), we hold that the Regulation is sufficiently clear and narrow that it "does not encourage arbitrary and discriminatory enforcement," Kolender, 461 U.S. at 357 (citation omitted), and therefore "establish[es] [the kind of] minimal guidelines" that Due Process requires. Morales, 527 U.S. at 60 (citation omitted).

B.

Both Gayer and the American Civil Liberties Union as amicus argue that Gayer's arrest also implicated Gayer's First Amendment right to speak freely. Whether the government may restrict a person's ability speak on its property depends upon whether the property is "public or nonpublic." Kreimer v. Bur. of Police for Morristown, 958 F.2d 1242, 1255 (3d Cir. 1992) (citation and quotation marks omitted).

All parties in this case agree that the Pavillion is a limited public forum. A limited public forum is a public forum only to the extent that it has been "intentionally

opened [by the government] . . . to the public for expressive activity."  Kreimer, 958 F.2d at 1259 (quotation marks omitted, emphasis in original).  Thus, the constitutionality of a restriction on expressive activity that is consistent with a limited public forum's purpose is determined using the more rigorous public forum standard and, conversely, the constitutionality of a restriction on expressive activity that is inconsistent with the forum's purpose is determined using the nonpublic forum reasonableness standard.  Id. at 1262.

Our first inquiry is whether the government had opened the Pavillion to expressive activity like Gayer's.  The evidence taken in a light most favorable to the government, demonstrates that the government had opened the Pavillion to the public to see the Liberty Bell, to take part in a short presentation, and then to leave.  The government did not intend to open the Pavillion to speeches made by members of the general public.  Indeed, the fact that the government had designated areas outside of the Pavillion for public speech suggests that the Pavillion had not been so designated.

Consequently, we will apply the nonpublic forum reasonableness standard to determine whether Gayer's arrest under 36 C.F.R.  2.32(a)(2) was constitutional.  Under that standard, we ask whether Gayer's arrest was "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  Perry Educ. Ass'n, 460 U.S. at 46.  As we have said, the regulation permits a Park Ranger to arrest a person who  disobeys an order given "during . . . other activities where the control of public movement and activities is necessary to maintain order and public safety."  36 C.F.R.  2.32(a)(2).  The record demonstrates that Gayer interrupted the park service presentation inside the Pavillion and halted the flow of tourists through the Pavillion while thousands of tourists were waiting in line outside.  It was reasonable for the government to ask her to stop and then to arrest her when she refused.  Further, there is no indication that she was asked to stop speaking because she was expressing a particular point of view.  The Ranger that told her to stop merely said, "that [is] not allowed."  36 C.F.R.  2.32(a)(2) is therefore constitutional as-applied to Gayer.

### III.

Protesters also argue that the district court should not have admitted a 15 minute video tape of the demonstration because it was not properly authenticated.  They argue that the tape, since it was an edited version of the complete two-hour tape, should have been authenticated by the editor instead of Officer Murphy, the camera operator. We review a trial court's decision to admit evidence for an abuse of discretion.  United States v. Sriyuth, 98 F.3d 739, 745 n.9 (3d Cir. 1996).  Evidence may be properly authenticated if a witness with knowledge testifies that it "is what [it] claim[s] to be." F.R.E. 901(b).  Because the tape was authenticated at trial by a person with knowledge the camera operator the trial court did not abuse its discretion when it admitted the tape. See United States v. McNair, 439 F. Supp. 103, 105 (E.D. Pa. 1977), aff'd, 571 F.2d 573 (3d Cir.)  (photographs authenticated by witness to the event).

Protesters also argue that the trial judge should have let them question Officer Murphy about his membership in the Philadelphia Fraternal Order of Police (F.O.P.).  They wanted to ask Murphy about his membership because they might have shown, given the F.O.P.'s supposed criticism of Jamal supporters in the past, that Murphy recorded the event in a biased way.  Since the tape showed scenes of what actually happened during the emergency at the Pavillion, any bias attributable to Murphy because of his membership in the F.O.P. would have been marginally relevant at best.  The trial court did not abuse its discretion when it held that the F.O.P. line of questioning was irrelevant.  Pfeiffer v. Marion Ctr. Area Sch. Dist., 917 F.2d 779, 781 (3d Cir. 1990) (relevancy determinations reviewed for an abuse of discretion).

### IV.

Protesters also challenge several aspects of their sentences.  They first argue that the trial judge should not have limited their travel to the federal district in which the resided.

A court may impose a special condition of probation to the extent that any such condition is reasonably related to factors set forth in [18 U.S.C.  ] 3553(a)(1) and (2), and to the extent that such conditions involve only such deprivations of liberty and property as are reasonably necessary to fulfill the

purposes of probation.  18 U.S.C.   3563(b).

United States v. Warren, 186 F.3d 358, 366 (3d Cir. 1999) (footnote omitted).
        Travel restrictions are a standard probation condition.  Id.  There was no
abuse of discretion in the trial judge's imposition of the travel restrictions because those
restrictions "reflect the seriousness of the offense, . . . promote respect for the law, . . .
and prove [a] just punishment for the offense."  18 U.S.C.   3553.
        Protesters also argue that they were punished for exercising their right to go
to trial because their sentences were more severe than the sentences received by those
demonstrators who chose not to go to trial.  We agree with the district court that
protesters' punishment reflects both their lack of remorse and their unwillingness to
accept responsibility for their illegal acts.
        Further, protesters suggest that it was error for the trial judge to sentence
them in a "fixed and mechanical" manner.  See United States v. Thompson, 483 F.2d 527
(3d Cir. 1973).  However, the trial judge considered each protester separately at
sentencing.  That protesters received the same sentence merely indicates that their
differences were not so significant as to warrant varied sentences.  There was no abuse of
discretion.
        Finally, it appears that each protester was ordered to pay a $25 assessment
instead of the $10 special assessment authorized by 18 U.S.C.   3013(a)(1)(A)(ii).  The
government properly conceded error.  We vacate the special assessment and remand to
the district court with instructions to decrease the assessment to $10 as to each protester.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

_____

TO THE CLERK:


        Please file the foregoing Not Precedential opinion.



                        /s/ J. Clifford Wallace
                        Circuit Judge