**JAMAL ALLISTER MORTON, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S.Ct. Criminal No. 2012-0044
Supreme Court of the Virgin Islands
September 13, 2013

DOLACE MCLEAN, PH.D., ESQ., Visions Law Firm, St. Thomas, USVI, *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(September 13, 2013)

SWAN, *Associate Justice*. Jamal Allister Morton appeals his convictions on several felony charges, including first degree murder and the unauthorized use of an unlicensed firearm. He alleges Sixth Amendment right violations, evidentiary errors, and insufficiency of the evidence to convict him of the charges. We conclude that Morton has not established any violations of his constitutional rights and that the evidence was sufficient to convict him. We further conclude that the trial court did not abuse its discretion in admitting evidence of his prior bad conduct, because the evidence was highly probative of an issue of consequence in the case. We conclude that Morton has advanced no credible claim warranting a reversal of his convictions; therefore, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 9, 2009, Basheem Ford was shot and killed in Market Square on St. Thomas. He was found lying in the street next to a parked sport utility vehicle. Ford sustained at least four gunshot wounds, and the nearby vehicle was damaged by bullet holes. Police Officer Gabriel Reed testified that on that date, he left his security job at Club Jaguar in Mandela Circle and drove to Weekes and Weekes Bakery located one block north of Market Square. Officer Reed testified that, after he left the bakery, Morton suddenly ran in front of Reed's vehicle, almost colliding with the vehicle. Officer Reed described how Morton appeared to be fleeing the Market Square area where Ford was murdered while simultaneously holding his trousers.

Subsequently, on August 20, 2009, Officer Reed was driving along Veteran's Drive and saw Morton running and then collapsing on the front lawn of the Ron de Lugo Federal Building and United States Courthouse ("Federal Building"). Detective Maha Hamdan and Crime Scene Technician Debra Mahoney were also in the area of the Federal Building at this time having just left the police station. Detective Hamdan testified

663

that they heard shots being discharged in the vicinity of the Federal Building. (J.A. at 477.) Detective Hamdan and another officer immediately proceeded to the area to investigate the source of the gunfire. Upon closer inspection, Detective Hamdan observed Morton lying on the lawn of the Federal Building, and a black pistol located approximately two feet away from him. (J.A. at 479 and 482.) Police officers arrived on the scene and also observed the firearm as well as bullets and casings near Morton. Mahoney processed the general area as a crime scene and collected bullet casings from the area.

The casings and bullets retrieved from the area of the Federal Building incident together with casings retrieved from the Ford murder scene were sent to FBI laboratory for testing. FBI experts determined that the casings found at the Federal Building and the casings retrieved from the Ford murder scene days earlier in Market Square came from the same weapon, which was the weapon found next to Morton where he collapsed at the Federal Building.

Morton was charged in a five-count Information with the murder of Ford. The Information charged Morton as follows: Count I, First Degree Murder, in violation of V.I. CODE ANN. tit. 14 §§ 921, 922(a)(1); Count II, Unauthorized Use of An Unlicensed Firearm During the Commission of a First Degree Murder, in violation of V.I. CODE ANN. tit. 14, § 2253(a); Count III, First Degree Assault, in violation of V.I. CODE ANN. tit. 14, § 295(1); Count IV, Unauthorized Use of an Unlicensed Firearm During the Commission of a First Degree Assault, in violation of V.I. CODE ANN. tit. 14, § 2253(a); Count V, Reckless Endangerment in the First Degree, in violation of V.I. CODE ANN. tit. 14, § 625(a). (J.A. at 14.)

Attorney Dolace McLean was appointed to represent Morton. After Attorney McLean informed the trial court of her inexperience in criminal matters, the trial court appointed Attorney Leslie Payton, an experienced criminal defense attorney and former territorial public defender, to be co-counsel on the defense team. Trial commenced on May 21, 2012, and the jury considered evidence from the murder of Ford and evidence gathered from the Federal Building incident.

On May 23, 2012, the jury returned verdicts finding Morton guilty of the lesser included offense of Count I, Second Degree Murder; guilty of the lesser included offense of Count II, Unauthorized Use of a Firearm During the Commission of Second Degree Murder; guilty of the lesser included offense of Count III, Third Degree Assault; guilty of the lesser

included offense of Count IV, Unauthorized Possession of a Firearm During the Commission of a Third Degree Assault; and guilty of Count V, Reckless Endangerment in the First Degree. (J.A. at 15.)

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The August 7, 2012 Judgment and Commitment ended the criminal proceedings against Morton and served as the final order in the case. Accordingly, we have jurisdiction over this appeal. *See, e.g., Ostalaza v. People*, 58 V.I. 531, 543 (V.I. 2013) (in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

## III. ISSUES AND STANDARD OF REVIEW

On appeal, Morton alleges that A) the trial court erred in failing to exclude evidence of the shooting incident at the Federal Building in violation of Rule 403 of the Federal Rules of Evidence, B) the trial court violated his Sixth Amendment right to effective assistance of counsel when it appointed an inexperienced attorney to represent him, C) the evidence against him was insufficient to convict him of any crimes, and D) the trial court violated his Sixth Amendment right to confront witnesses against him by rejecting the defense's objections during trial.

We review a trial court's decision to admit evidence for abuse of discretion. *Billu v. People*, 57 V.I. 455, 461 (V.I. 2011); *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008). *See also United States v. Goldin*, 311 F.3d 191, 197 (3d Cir. 2002). We exercise plenary review over sufficiency of the evidence claims and we interpret the evidence in the light most favorable to the People as the verdict winner. *Simmonds v. People*, S. Ct. Crim. No. 2012-0074, 2013 V.I. Supreme LEXIS 42, *6 (August 13, 2013); *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). *See also United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). In making our determination, we do not weigh the evidence or substitute our credibility determinations for those of the jury's. *Ostalaza*, 58 V.I. at 544; *Christopher v. People*, 57 V.I. 500, 514 (V.I. 2011); *Nanton v. People*, 52 V.I. 466, 486 (V.I. 2009). The effectiveness of counsel involves mixed

questions of law and fact, so de novo review is applied. *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994); *United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir. 2005).

## IV. DISCUSSION

### A. The trial court did not abuse its discretion in failing to exclude evidence under Rules 403 and 404(b) of the Federal Rules of Evidence

FBI test results confirmed that the shell casings found at the Federal Building approximately two weeks after the murder of Basheem Ford in Market Square, matched the shell casings found at the scene of Ford's murder. (J.A. at 560-61.) The FBI report further informed that both sets of shell casings likely came from the same weapon, which was the gun found lying next to Morton on the lawn of the Federal Building. This linkage in the murder weapon and ammunition forged the connection between Morton and the murder of Ford. Morton argues that the facts concerning the incident at the Federal Building should have been excluded under Rule 403 of the Federal Rules of Evidence because the probative value was substantially outweighed by its unfair prejudicial nature. Because the factual nature of the Federal Building incident is indicative of another crime, Morton relies on Rule 404(b) of the Federal Rules of Evidence in arguing that this incident should not have been introduced to the jury.

██ ██ Generally, if evidence of other bad acts or previous criminal activity is offered only to prove that a defendant has a propensity to commit crime, it must be excluded. FED. R. EVID. 404(b); *Chinnery v. People*, 55 V.I. 508, 526 (V.I. 2011). *See also United States v. Lee*, 612 F.3d 170, 186 (3d Cir. 2010). However, if such evidence is proffered to establish some fact other than criminal propensity, then admissibility depends upon whether probative value of the evidence was substantially outweighed by its unfair prejudicial effect as provided in Rule 403. *Huddleston v. United States*, 485 U.S. 681, 691-92, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); *Lee*, 612 F.3d at 186. All evidence offered against a defendant is prejudicial to the extent that it establishes guilt, and Rule 403 only supports exclusion of unfairly prejudicial information. *United States v. Sussman*, 709 F.3d 155, 173 n.18 (3d Cir. 2013) (evidence can be kept out under Rule 403 "only if its unfairly prejudicial effect

substantially outweighs its probative value") (alterations and internal quotations marks omitted). To avoid exclusion under Rule 403, the evidence of a prior bad act must be relevant to a contested issue. Relevance is determined by "the context of the facts and arguments in a particular case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008). Because it is so fact specific, relevancy is not generally amenable to broad *per se* rules. *Id.* However, the probative value of proposed evidence should meet at least two distinct requirements: "(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)(citations omitted).

In *Tyson v. People*, 59 V.I. 391 (V.I. 2013), the People introduced evidence of Tyson's prior criminal conduct in order to show that the bullet casings collected from the scene of the prior conduct were discharged from the same firearm that Tyson was accused of using in that current case. We upheld the trial court's ruling in *Tyson* and found that the evidence was relevant and admissible for a proper purpose, that its probative value was not substantially outweighed by the potential for unfair prejudice pursuant to Rule 403, and that the jury was instructed to consider the evidence for its limited purpose. 59 V.I. at 423.

Similarly, in this case it is obvious that the Federal Building incident and the retrieval of the shell casings from that incident are highly probative of Morton's guilt or innocence in the crime charged in the present case. The prosecution offered evidence of the incident at the Federal Building to create the inference that Morton used the same weapon he was found in possession of at the Federal Building to shoot and murder Ford. Because there was no evidence establishing that Morton possessed a weapon at the time and place that Ford was murdered, the Federal Building incident is an important nexus linking Morton to Ford's murder. The evidence retrieved from the Federal Building was used for the proper purpose of identifying Morton as Ford's shooter. The identity of the murder suspect is obviously of consequence to the determination of guilt in this case, and the linkage between the weapon Morton was found with at the Federal building and the gun's match to the casings found at Ford's murder are obviously highly probative in linking Morton to the murder.

667

■ Rules 403 and 404 are rules of inclusion rather than exclusion, and admission of other criminal conduct is favored as long as such evidence is "relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003) (citations omitted). The relevant portions of the Federal Building incident were introduced at trial, whereas the irrelevant more prejudicial nature of the incident was excluded. Although being found in constructive possession of a weapon in a public place usually indicates misconduct, precautions were taken in this case to limit the jury's knowledge of the more inflammatory criminal aspects of the Federal Building incident. At a pre-trial conference, where the People sought to have the Federal Building evidence introduced, the People noted that:

> [they] intend to show evidence that within a short period of time, a matter of days, I think it's two weeks . . . that the same officers, by and large, were called to a second scene [where] the Defendant was found unconscious. He was found in very close proximity to a gun, that he was surrounded by casings, and that the gun that he had, at least constructive possession of, and the casings surrounding him matched the firearm that killed Basheem Ford. We are not going to [say] that he was charged with anything. We are not going to talk about the casings that were up on the road above, or that anybody'[s] cars were shot at, or that people were shot at, just he was found, this is what he was found surrounded by, this firearm was laying right by his head[.]

(J.A at 766-67.) The People thus limited the amount of evidence admitted concerning the Federal Building incident, and omitted the most highly prejudicial portions of the evidence from the same incident.

■ Irrefutably, the evidence offered concerning the Federal building incident was highly probative in creating a nexus between the gun found near Morton at the Federal Building and the gun used in the shooting of Ford. Additionally, FBI investigators concluded that the shell casings found at the Ford murder scene and at the Federal Building came from the weapon that was found near Morton at the Federal Building. Therefore, introduction of this information was highly relevant to the present case against Morton. Further, the issue of the identity of the shooter is clearly of consequence to the determination of Morton's guilt. Accordingly, the probative value of the Federal Building incident, in which Morton was

found with a weapon next to him that was used in the Ford murder, was not substantially outweighed by any danger of unfair prejudice to Morton. Therefore, the trial court did not abuse its discretion in failing to exclude this evidence from the Federal Building incident.

## B. Morton failed to establish a claim for ineffective assistance of counsel

■ Morton next argues that he received ineffective assistance of counsel because his assigned counsel, Dolace McLean, had never handled a criminal trial prior to being appointed as his defense counsel. The Sixth Amendment guarantees a right to effective counsel. The landmark decision in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) outlines the standard that must be applied for an ineffective assistance of counsel claim to be established. First, Morton must identify acts or omissions of counsel that are alleged to have been outside the wide range of reasonable professional judgment and competent assistance. *Id.* at 690. Second, Morton "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

■ Morton fails to meet even the first prong of the *Strickland* test because he does not allege any specific errors or omissions in his counsel's representation that would render her representation ineffective. Instead, Morton argues that the appointment of an inexperienced counsel was "in and of itself so serious an error that it is prejudice *per se*." (Appellant's Br. at 16.) Importantly, Morton cites to no legal authority that supports his argument that ineffective assistance of counsel can be found *per se* for lack of experience alone. On the contrary, the common law consistently avouches that it is not an attorney's experience that is evaluated in an ineffective assistance of counsel claim, but rather his or her performance. *LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998). "An attorney can render effective assistance of counsel even if he has had no prior experience in criminal advocacy." *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986) (defendant was not denied effective assistance of counsel by attorney who only had one year of experience practicing law and was unfamiliar with local court rules and rules of evidence where defendant did not point to any specific errors resulting from lack of experience and familiarity with court rules); *Aragon v. State*, 114 Idaho 758, 760 P.2d 1174, 1177 (1988) ("The dispositive facts upon

which an ineffective assistance claim succeeds or fails center[] on counsel's performance, not the level of his or her experience").

 Experience can be relevant to the overall examination of whether the *Strickland* standards are met and can be used in examining the totality of the circumstances of whether professional competent assistance was rendered. *See Leatherwood v. State*, 473 So. 2d 964, 971 (Miss. 1985) (good experience would not assure proper representation so the focus should be upon performance instead); *State v. Joubert*, 235 Neb. 230, 455 N.W.2d 117, 126 (1990) ("while a particular lawyer's level of experience may shed light on his or her performance, it is the lawyer's performance that must be evaluated"). However, a lack of experience alone is insufficient to establish a *per se* deficient performance constituting ineffective assistance of counsel. Even if McLean's lack of experience had somehow affected her representation of Morton, he fails to specify how exactly her performance failed to meet the reasonableness standard enunciated by *Strickland* and how Morton could have been prejudiced by any allegedly deficient performance. Accordingly, without more, the appointing of an inexperienced attorney cannot, by itself, amount to ineffective assistance of counsel.

 Further, Morton's argument is disingenuous because Attorney McLean was not the only counsel appointed to represent him. Upon being informed by Attorney McLean that she lacked experience in trying criminal cases, the trial court appointed Attorney Leslie Payton as co-counsel to assist Attorney McLean. Attorney Payton is a former public defender with years of experience as a criminal defense attorney. The record of proceedings discloses that Attorney Payton defended Morton during the trial almost entirely by himself. Attorney McLean's role in the actual trial of Morton was minimal at best. Therefore, Morton's argument of ineffective assistance of counsel is specious.[1]

## C. Sufficiency of the evidence

 Morton asserts that the evidence adduced at trial was insufficient to convict him of the offenses for which he was charged. Morton

---

[1] "Although, ordinarily, ineffective assistance of counsel claims must be raised in a collateral proceeding rather than on direct appeal," such a collateral review is unnecessary if the appellate court can conclude that it has 'an adequate record' to resolve the issue. *Powell v. People*, 59 V.I. 444 n.6 (V.I. 2013) (internal quotation marks omitted).

challenges the sufficiency of the evidence mainly by asserting that all the evidence linking him to the crimes came from the sole uncorroborated testimony of Officer Reed. Importantly, when reviewing the sufficiency of the evidence, we do not serve as usurpers of the role of the jury by engaging in second-guessing the evidence presented at trial, nor do we re-weigh the credibility of witnesses. *Williams v. People*, 55 V.I. 721, 734 (V.I. 2011); *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). *See also United States v. Walker*, 657 F.3d 160, 171 (3d Cir. 2011); *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). In reviewing sufficiency-of-the-evidence claims, we are limited to determining whether there was enough evidence presented from which a reasonable trier of fact could establish guilt beyond a reasonable doubt. *Christopher*, 57 V.I. at 514-15; *Ramirez v. People*, 56 V.I. 409, 416-17 (V.I. 2012). *See also Miller*, 527 F.3d at 60.

The jury heard testimony that Morton was seen fleeing the crime scene in the vicinity of the murder in Market Square. Officer Reed testified that he came upon Morton and almost collided with him as Morton dashed unexpectedly in front of Reed's vehicle, and Morton continued running away. (J.A. at 382-87.) Additionally, the jury further heard Officer Reed testify that Morton was found with the murder weapon approximately two weeks later on the lawn of the Federal Building. This testimony is corroborated by Detective Hamdan and Crime Scene Technician Mahoney. Expert Testimony from Brett Mills, firearms and tool mark examiner with the FBI, confirmed that the weapon found next to Morton at the Federal Building was extremely likely the same weapon used to murder Ford in Market Square based upon the matching shell casings retrieved from both locations.

The sufficiency of the evidence is determined by crediting all reasonable inferences that support the verdict. *Castor v. People*, 57 V.I. 482, 489 (V.I. 2012); *Nanton*, 52 V.I. at 485 n.10. The Government may prove guilt based on circumstantial evidence alone. *United States v. Kemp*, 500 F.3d 257, 293 (3d Cir. 2007). "Moreover, the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). *See also Galloway v. People*, 57 V.I. 693, 700 (V.I. 2012).

There was no direct eyewitness testimony linking Morton to the murder of Ford other than his presence in the area of Market Square and his fleeing the area at the time of the murder. However, from all the

evidence produced at trial reasonable jurors could find beyond a reasonable doubt that Morton used the same weapon that he was found in possession of at the Federal Building to murder Ford a few days earlier. Accordingly, the evidence to convict was sufficient.

## D. Morton is unclear about how his Sixth Amendment right to confront witnesses has been violated

█ Morton argues that his Sixth Amendment right to confront witnesses against him was violated when "the trial court sustained unreasonable objections from the prosecutor." (Appellant's Br. at 16). The confrontation clause ensures a criminal defendant "the right to physically face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). This guarantee, however, does not permit objectionable questioning or abusive examination tactics,. and a trial court retains wide latitude to impose reasonable limits on cross-examination to guard against the risk of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008).

█ Morton states very broadly that his confrontation rights were violated because the trial judge upheld certain of the prosecutor's objections. He does not, however, state with specificity where in the record the perceived infringement upon his rights occurred. In making an argument for a violation of his Sixth Amendment right, Morton must state where in the record the violation of his right occurred. *See* V.I.S.CT.R. 22(a)(5) and (d).[2] In making such an overbroad argument, Morton asks

---

[2] V.I.S.CT.R. 22(a)(5) states in pertinent part that:

The argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on.

V.I.S.CT.R. 22(d)states in pertinent part that:

All assertions of fact in briefs shall be supported by a specific reference to the record. All references to portions of the record contained in the appendix shall be supported by a citation to the pages of the appendix at which those parts appear, followed by a parenthetical description of the document to which they referred, unless otherwise apparent from context. Intelligible abbreviations may be used. If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the appendix or of the transcript at which·the evidence was identified, offered, and received or rejected.

this court to comb through every objection made by the prosecution at trial and determine which objections Morton believes deprived him of his right to confrontation. We decline this invitation, since this Court's Rule 22 clearly places the burden of framing and presenting a litigant's appellate arguments on counsel, and not on the Court.

■■ While Morton's overbroad and underdeveloped allegations of a confrontation clause violation are insufficient to identify any constitutional deprivation in the present case, we do find it crucial to note and warn the trial court that the defense must be afforded considerable leeway in cross-examining witnesses to the extent permitted by the rules of the court and the rules of evidence. We would caution the trial court to avoid the risk of having a verdict overturned on a needless confrontation clause violation because the trial judge lacks patience or is perturbed with defense counsel's strategy or his technique in conducting the defense.

In this case, Morton fails to articulate how the objections against the defense's cross-examination (and any rulings on those issues) were erroneous, and how they prejudiced him. Thus he has not sufficiently developed this issue by identifying any fact, topic or ruling that might constitute reversible error. Accordingly, Morton's allegation of a Confrontation Clause violation fails.[3]

## V. CONCLUSION

Because the incident at the Federal Building provided an important link to Morton's involvement in the murder of Ford, the incident was properly admitted in accordance with Federal Rules of Evidence 403 and 404. Because the shell casings retrieved from the scene of the Ford murder matched the casings and gun found in constructive possession of Morton on the lawn of the Federal Building, there was strong circumstantial evidence that Morton used the same firearm to murder Ford. Importantly, the trial record confirms that Morton was seen in the general vicinity of Market Square on the night of and the approximate time of the Ford murder.

---

[3] In his brief, Morton claims that "the trial court sustained unreasonable objections from the prosecutor" during his closing argument. (Appellant's Br. 16.) As with his Sixth Amendment argument, Morton — in contravention of the Virgin Islands Supreme Court Rule 22(m) — does not reference any particular objection, nor cite to the record, nor indicate why he believes he People's objections were unreasonable. Accordingly, this issue has been waived.

Morton's argument that his counsel was *per se* ineffective due to her lack of experience is also spurious. Morton does not allege any specific action or inaction that fell below the range of reasonable professional judgment and performance and caused him prejudice as required by the standards articulated in *Strickland*. Lack of experience alone is not sufficient to meet *Strickland* requirements for ineffective assistance of counsel, and in this case experienced co-counsel participated actively in Morton's defense.

When viewing the evidence in a light most favorable to the People, the circumstantial evidence presented at trial provided more than sufficient evidence to permit a rational trier of fact to conclude, beyond a reasonable doubt, that Morton murdered Ford as charged. Further, Morton has not developed his claim of a Confrontation Clause violation sufficiently in accordance with the Rules of this Court, and resultantly has not provided us with sufficient basis to find reversible error in the trial court's sustaining of objections to defense counsel's cross-examination. For the reasons elucidated above, the Judgment and Commitment of the trial court is hereby AFFIRMED.