**RANDY BURKE, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2013-0014
Supreme Court of the Virgin Islands
December 6, 2013

CARL A. BECKSTEDT III, ESQ., Beckstedt & Associates, St. Croix, USVI, *Attorney for Appellant.*

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(December 6, 2013)

SWAN, *Associate Justice.* Appellant, Randy Burke, was found guilty of the charges in a Third Amended Information of first degree murder and reckless endangerment. Burke appeals his convictions on the grounds that there was insufficient evidence to find that his actions caused the victim's death, that the trial court failed to properly instruct the jury, that it was

error to admit the testimony of the emergency room physician, and that it was error not to allow the impeachment of a witness. For the reasons elucidated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The facts are as follows. On October 21, 2006, Julius Kevin Cupid ("Cupid") and Asheba Benjamin ("Benjamin"), cousins, resided at the Aureo Diaz Heights Housing Complex on St. Croix with their grandmother, Christineta Benjamin ("Christineta"). (J.A. 401-02.) At a few minutes past 6 o'clock, Randy Burke ("Burke"), Christineta's grandson, entered Christineta's home and proceeded to Cupid's bedroom, where he was ironing clothing in preparation for an evening event. (J.A. 403, 406.) After a conversation between Burke and Cupid ended, Burke proceeded to a third bedroom in the apartment where he rummaged through a bag of clothing and thereafter returned to Cupid's bedroom. When Burke returned to Cupid's room, he asked Cupid if he had taken his rolling paper and leaf tobacco, to which Cupid responded that he had not. (J.A. 407.) The conversation escalated to a verbal altercation in which Burke continued to accuse Cupid of taking his property. Burke said to Cupid, "You's a punk, and if you go on too bad I will take everything from you." (J.A. 408.) Benjamin left her bedroom and entered Cupid's bedroom when she heard Burke say, "Don't go on too bad 'cause he [sic] will lick his head top off.' " (J.A. 409.) At that time, she interposed herself between Cupid and Burke because they were already truculently and bellicosely arguing with each other. Benjamin asked Burke to leave the apartment. (J.A. 422.) Burke left Cupid's bedroom and returned to the third bedroom to attend to his property. However, Burke again returned to Cupid's bedroom. Benjamin immediately returned to Cupid's room as well. (*Id.*) Benjamin parted her cousins. However, Burke left and returned multiple times to Cupid's bedroom. (*Id.*) On one of the occasions, Benjamin entered the room and saw Cupid with a knife held at his side. (J.A. 423.) Cupid never pointed the knife in Burke's face because Benjamin had positioned herself between her cousins during the altercation. (J.A. 423-24.)

The knife prompted Burke to state that he was leaving but would return. (J.A. 424.) Thereupon, he left the apartment. (*Id.*) Benjamin followed Burke and, as he departed, she locked the main and back doors. Then Benjamin moved to the balcony where she could observe Burke

going towards the Charles Emanuel School and stopping at a silver car at the side of the road. (J.A. 424-25, 458.) Benjamin then returned to the inside of the apartment to calm down Cupid, who had remained in his bedroom. (J.A. 426-27.) She then heard the sound of female voices outside the apartment screaming fearfully. Benjamin proceeded to the porch where she saw Burke returning to the apartment carrying something that she could not identify. (J.A. 434-35, 437, 440.) Benjamin ran inside the apartment to call her mother but failed to complete the telephone call. Meanwhile, Burke was attempting to kick in the door, simultaneously saying "Open the door. I gone kill yuh muddahskunt. Open the door. Wait until I get you and lick your head top off," which was obviously directed at Cupid. (J.A. 448.) Cupid proceeded towards the door but was restrained by Benjamin who importuned him not to open the door. (J.A. 450.) At the time, Cupid was unarmed. After approximately five minutes, Cupid complied with Benjamin's request and returned to his bedroom. (*Id.*)

When the commotion at the apartment door ceased, Benjamin returned to the telephone to call her mother. Suddenly, Cupid bolted past Benjamin and continued on to the front balcony of the second story apartment. (J.A. 451.) Benjamin ran after him but before she could pull him back into the apartment, she heard a gunshot. (J.A. 451.) Benjamin retreated to the back porch, climbed down to the ground level and ran away from her home. (J.A. 453.) Subsequently, she returned to the apartment with a crowd of onlookers who were running towards her apartment. (*Id.*) Benjamin saw Cupid's limp body hanging over the porch railing. (J.A. 455.)

Emergency Medical Technicians (EMTs) responded to the incident and found a police officer holding a towel to Cupid's face. (J.A. 504.) The EMTs found him gurgling blood. (J.A. 505.) Cupid had a faint pulse and was rushed to the hospital with "a laceration, puncture wound to the lower lip . . . a major laceration to his tongue, and a couple of his teeth were missing." (J.A. 512.) Cupid was transported to the Juan Luis Hospital and transferred to the care of emergency room physician, Dr. Jennifer Kolodchak. (J.A. 514-15.) Life saving measures were performed upon Cupid but they were unsuccessful. He was declared dead at 7:20 pm. (J.A. 527.)

Burke was arrested on October 23, 2006 and charged in a Second Amended Information as follows: Count I, murder in the first degree in violation of 14 V.I.C. § 922(a)(1); Count II, possession of a firearm during the commission of a crime of violence in violation of 14 V.I.C. §2253(a);

and Count III, reckless endangerment in violation of 14 V.I.C. § 625(a). The trial commenced on December 14, 2009. The People presented their case after which Burke moved for a Judgment of Acquittal under Federal Rule of Criminal Procedure Rule 29; however, the court denied the motion. Burke renewed his Rule 29 motion at the close of his case. The trial court granted the Rule 29 motion only in regards to Count II and denied the motion in regards to Counts I and III. The jury deliberated and found Burke guilty of Counts I and III.[1]

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012) (citing *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008); *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). Burke filed a post-trial Motion for Judgment of Acquittal and Motion for a New Trial which were denied by the Superior Court in an order dated February 1, 2013, and entered on February 4, 2013. Burke timely filed this appeal on February 22, 2013. Therefore, this Court has jurisdiction over this matter.

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the trial court's application of law is plenary and its findings of facts are reviewed for clear error. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2013); *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). When the Court is presented with a challenge to the sufficiency of the evidence, we will "examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the government as the verdict winner." *Allen v. People*, 59 V.I. 631, 635 (V.I. 2013) (quoting

---

[1] The trial court read the Third Amended Information to the jury as part of the giving of the instructions. The Third Amended Information designated the reckless endangerment charge as Count II; it did not include the possession of a firearm charge, which had been designated as Count II in the Second Amended Information. (12/17/09 Trial Tr. at 113-14; J.A. 982-83.)

*United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (citations and internal quotation marks omitted). A defendant seeking to overturn his conviction on the basis of the sufficiency of the evidence "bears a very heavy burden." *Castor v. People*, 57 V.I. 482, 488 (V.I. 2012) (quoting *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) (internal quotation marks omitted)). The standard of review for challenges to jury instructions given by the trial court is for an abuse of discretion. *Ostalaza v. People*, 58 V.I. 531, 556 (V.I. 2013); *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir 2008) (citing *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006)).

## IV. DISCUSSION

### A. The People presented sufficient evidence that a rational jury could find beyond a reasonable doubt that Burke was the cause of Cupid's death.

Burke asserts that there is insufficient evidence for him to be convicted on either count of the Information. Specifically, he points out that "[n]o witness testified that the Defendant, in fact, shot Cupid." (Appellant's Br. at 14.) Burke's arguments amount to a challenge to the sufficiency of the evidence because the evidence was circumstantial, and there was no direct testimony presented that definitely stated that Burke murdered Cupid. However, the circumstantial evidence in this case was more than sufficient to permit the jury to find beyond a reasonable doubt that Burke was guilty.

██ In determining whether the defendant has met the heavy burden of showing insufficiency of the evidence to support this conviction, we review the evidence in the light most favorable to the People, considering the totality of the circumstances and all the evidence presented. *Allen*, 59 V.I. at 635. "The Government may prove guilt based on circumstantial evidence alone. *Morton v. People*, 59 V.I. 660, 671 (V.I. 2013) (citing *United States v. Kemp*, 500 F.3d 257, 293 (3d Cir. 2007)). The People did not present a witness who said that he or she saw Burke shoot Cupid. Nonetheless a review of all the evidence demonstrates that it was more than sufficient to support his convictions for these crimes beyond a reasonable doubt. Benjamin testified that Burke repeatedly threatened that he would "lick [Cupid's] head top off." (J.A. 409.) At another point, Benjamin testified that Burke said, "Open the door. I gone kill yuh

muddahskunt. Open the door. Wait until I get you and lick your head top off." (J.A. 448.) She also testified that she saw Burke approaching the apartment building with an object in his hand she could not identify. (J.A. 434-35.) Benjamin further stated that as soon as Cupid stepped onto the balcony, she heard a gunshot. (J.A. 451.)

Although Beatrice Lawrence ("Lawrence") was designated as a hostile witness, in her signed statement to police on the night of the incident, she stated that she heard a gunshot after she saw Burke brandish a gun. (J.A. 713.) At this juncture, Lawrence was only three feet from Burke, whom she knew exceptionally well, including having had a past intimate relationship with him. (J.A. 720, 728.) Lawrence observed Burke shooting upwards which coincided with Cupid being shot on the second floor balcony. (J.A. 723.) When Lawrence heard the shot, she retreated to her apartment, which was located below the one where Cupid was shot. (J.A. 713.) After the shooting, she observed Burke hurriedly departing the area of the crime. (J.A. 724.)

No testimony was elicited which contradicted the testimony of Benjamin and Lawrence. Significantly, Dr. Kolodchak, a licensed emergency room physician pronounced Cupid dead with the cause of death being a gunshot wound to the face with ensuing cardiac arrest. (J.A. 527.)

The trial court also included a discussion of circumstantial evidence in the final jury instructions. The court stated,

> There are two types of evidence from which you may properly find the facts in this case, one is the direct evidence, such as the testimony of an eyewitness or someone who asserts actual knowledge of facts. The other is indirect, or circumstantial evidence. Circumstantial evidence or indirect evidence consists of facts that lead to a reasonable inference of the existence or nonexistence of another fact.

(J.A. 978.) Considering the entire body of evidence, it was reasonable for the jury to find Burke guilty beyond a reasonable doubt on both charges.

### B. The trial court did not err in not using the exact jury instruction language proposed by Burke in relation to the victim's cause of death.

Burke asserts that the trial court erred when it decided not to use his proposed jury instruction from a volume of pattern federal jury

263

instructions relating to the cause of the victim's death. (Appellant's Br. at 18.) He specifically argues that the jury instructions given by the trial court did not cover the points contained in his proffered instruction, because they failed to break down causation for the jury in the careful manner of the model instructions. (Appellant's Br. at 18-19.) He further asserts that he was prejudiced because his conviction is based on causation that was not addressed in the final jury instructions given but was included in his proposed instruction. (Appellant's Br. at 19.)

■ "It is a recognized principle that a defendant is entitled to an instruction on any cognizable defense 'for which there exists evidence sufficient for a reasonable jury to find in his favor.' " *Prince v. People*, 57 V.I. 399, 411-12 (V.I. 2012) (citations omitted). "When a timely objection to a final jury instruction was made, we review the objection for abuse of discretion." *Id.* at 404 (citing *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 765, 44 V.I. 336 (3d Cir. 2001)). A jury is to be instructed on each essential element of the offenses charged, and failure to do so constitutes error. *Nanton v. People*, 52 V.I. 466, 479 (V.I. 2009). "[T]he validity of a challenge to jury instructions must be considered against the complete jury instructions and the whole trial record." *Id.* (citation omitted.) Further, "[i]n determining whether the [trial] court abused its discretion, [this] Court evaluates whether the proffered instruction was legally correct, whether or not it was substantially covered by other instructions, and whether its omission prejudiced the defendant." *Phillips v. People*, 51 V.I. 258, 269 (V.I. 2009) (quoting *United States v. Pitt*, 193 F.3d 751, 755-56 (3d Cir. 1999)).

■ Reviewing the jury instructions as a whole, no basis exist to find that the trial court erred in failing to give Burke's proposed jury instruction. The proposed instruction includes elements substantially covered in other instructions that were given by the court and thus it would have been duplicative and unnecessary. The proposed instruction stated that the People must prove the defendant committed the unlawful killing beyond a reasonable doubt. (Appellant's Br. at 18.) The actual instructions given in this case stated the same proposition, for example: "Before the Defendant may be found guilty of a crime, the People must prove, beyond a reasonable doubt, that the Defendant committed an act that the law declared to be a crime." (J.A. 984.) The actual instructions went further and provide a definition of the meaning of the concept of proof beyond a reasonable doubt. (J.A. 994-96.) Burke's proposed

instruction stated that the People must "prove that the defendant's conduct was the direct cause of [the victim's] death." (Appellant's Br. at 18.) The actual instructions given in this case stated that the jury must find "that the Defendant Randy Burke, unlawfully killed a human being, to wit, Julius Cupid." The proposed language was therefore substantially the same as that in the instructions actually given. *Phillips*, 51 V.I. at 269. The proposed instruction gave a definition of the term "unlawful," which the actual instructions also include. (J.A. 987.) As a whole, the trial court's final jury instructions were more than sufficient to address each of the required elements and concepts applicable in this case, and its discretionary decision not to include Burke's proposed instruction on the same principles was not error.

## C. The trial court did not abuse its discretion by admitting the testimony of Dr. Kolodchak.

Burke argues that the testimony elicited from Dr. Kolodchak was expert opinion that had not been disclosed as planned expert testimony during discovery, and he contends that she was not qualified as an expert at trial. (Appellant's Br. at 19-20.) In its Memorandum Opinion dated February 1, 2013, the trial court held that Dr. Kolodchak's testimony was not that of an expert because she consulted the records of Cupid's visit at the hospital, including the notice of death and other records. The trial court further stated that she never "testifie[d] in the form of an opinion regarding a fact that [wa]s within the scope of [her] special knowledge, skill, experience, or training. . . ." *See Ritter v. People*, 51 V.I. 354, 366 (V.I. 2009). The trial court further differentiated the testimony of the physician in *Ritter* from Dr. Kolodchak's testimony in the present case, noting that Dr. Kolodchak never informed the jury about the life threatening potential of Cupid's injuries, and did not give any forecasting of the results of his injuries. The trial court concluded that Dr. Kolodchak testified as a treating physician only. We review these challenges to the trial court's admission or exclusion of expert testimony only for abuse of discretion. *People v. Todmann*, 53 V.I. 431, 436 (V.I. 2010); see *Ritter*, 51 V.I. at 359)).

Burke is correct that the People never provided him with any disclosure regarding expert opinions. Even so, the alleged violation of the discovery rules by the People is unfounded because the People never took the position before, during, or after trial that Dr. Kolodchak was an expert

witness. There could be no disclosure about an expert where a party has not designated the witness as an expert. There is, then, no discovery violation where the purported expert does not give testimony constituting an expert opinion.

Burke argues that Dr. Kolodchak's testimony was that of an expert because she was allowed "to speculate without direct recollection as to the life-threatening injuries sustained by Julius Cupid." (Appellant's Br. at 20.) The trial court concluded, however, that this witness never testified as an expert witness but as a treating physician. (J.A. 20.) The trial court further stated that Dr. Kolodchak never told the jury whether Cupid's injuries were life-threatening. (J.A. 21.) The record in this case supports the conclusion of the trial court. Dr. Kolodchak's testimony was basic and direct. She made no new revelations and primarily relayed the information that she had previously, years earlier, recorded as part of her responsibilities as the treating physician on duty that evening at Juan Luis Hospital emergency room where the victim was treated. It was not an abuse of discretion for the trial court to treat this witness' testimony in this manner.

### D. The trial court's decision not to inform the jury of its decision to grant Burke's Rule 29 Motion during final jury instructions was not an abuse of discretion.

Burke asserts that the trial court's failure to inform the jury during final jury instructions that he was no longer charged under Count II with the offense of possession of a firearm during the commission of a crime of violence, was a fatal error because the granting of his motion was exculpatory. (Appellant's Br. at 25.) Burke presents this argument but fails to support it with any relevant case law precedent, rules of procedure or court rules. Burke admits, "The problem presented by the omission of instructing the jury of an acquittal within the same trial has been hard to research for analogous cases." (Appellant's Br. at 23.) This illustrates that Burke's argument is meritless. He continued that assertion by attempting to analogize his case to that of *Hess v. State*, 20 P.3d 1121 (Alaska 2001), which the trial court found to be inapplicable and this Court agrees. In *Hess* the defendant was not acquitted by a Rule 29 Motion of one of the counts in the information lodged against him, as in this matter, but he was arguing to have the jury be told of his acquittal in a previous case involving a separately alleged offense of a similar nature, offered to rebut

proof of an unrelated prior incident. *Id.* at 1122. The nature, purpose, and effect of the proof offered in *Hess* is simply not analogous to the present case in any respect. Moreover, the purported need to advise the jury of Burke's exoneration on Count II in the Second Amended Information, the firearms possession charge, was non-existent since the instructions as given focused the jury on the only two offenses remaining.

■ Further, Burke's argument is spurious because of the following. When the trial commenced, Burke was charged with three counts in the Second Amended Information. After the trial court granted the Rule 29 Motion for Judgment of Acquittal, it became absolutely necessary to delete Count II of the charges, which prompted the filing of a Third Amended Information with the two remaining charges. Additionally, in the final jury instructions, the trial judge explicitly informed the jurors that Burke was only on trial for acts alleged in the Third Amended Information. (J.A. 982-83.) *See Ostalaza,* 58 V.I. at 555 (citing *Augustine v. People,* 55 V.I. 678, 686 (V.I. 2011) (recognizing presumption that jurors will follow final jury instructions).

### E. The trial court was correct in denying Burke's motion to impeach Lawrence by use of her previous conviction.

■ Burke asserts that the trial court committed an error when it denied his request to impeach Lawrence using her prior conviction for drug trafficking. (Appellant's Br. 25.) Burke contends that the facts of this conviction should have been admitted to demonstrate her bias and to impair her credibility. (Appellant's Br. 26.) He also includes a brief discussion of the Superior Court's transition from the Uniform Rules of Evidence ("URE") to the Federal Rules of Evidence ("FRE") and correctly notes that, at the time of the present trial, the Superior Court was bound to apply the URE. (Appellant's Br. 27.) Burke then ends his argument with what seems to be an admission that the trial court was correct when he states:

> Even though this Court was bound to follow the URE at trial, the Court erred in not allowing this testimony as Lawrence's conviction was a crime of dishonesty that was admissible to show both bias and impair her credibility. Since the URE has now been repealed, it is in the interest of justice to allow Defendant a new trial to present this testimony for a jury to consider.

267

(Appellant's Br. 28.) Burke seems to be importuning this Court to grant a new trial solely for the purpose of applying what he perceives to be the more favorable impeachment provisions applicable under the FRE. We find this argument unavailing. It is apparent that the trial court did not err in ruling on the scope of permissible impeachment under the governing URE provision, which was 5 V.I.C. § 835.

Burke also argues that *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977), is persuasive because in hypothetical dicta it specifically mentions the use of false customs forms as conduct that might be treated as a crime involving dishonesty for impeachment purposes under the prior version of FRE 609 applicable in the 1970s, which like section 835 makes admissibility of a prior conviction contingent on the crime involving a dishonest or false statement. The *Hayes* court, in the same discussion on which Burke relies, stated that where "nothing more than the bare fact of conviction" is raised during attempted impeachment, there is no basis for treating a drug importation offense as a crime of false statement for impeachment purpose. *Id.* at 828. Moreover, in the much more recent case of *FedEx Ground Package Sys. v. Futch*, 944 So.2d 469, 471 (Fla. Dist. Ct. App. 2006), the Hayes discussion about the customs form is relegated to mere dicta. That court further pointed out that the Second Circuit held that the conviction in *Hayes* was not admissible. *Id.* It further stated, "Notably, the *Hayes* court did not hold that the crime of cocaine importation is in any way a crime involving dishonesty or a false statement." *Id.* We agree with the majority of modern decisions which reach this same conclusion. Lawrence's convictions were for conspiracy to import cocaine and for possession of cocaine on board an aircraft with intent to distribute, and not for falsification of a U.S. customs form. (J.A. 668.) The assertion that Lawrence falsified information on a U.S. customs form is solely Burke's assertion which is unsupported in the record. The trial court's ruling on this scope of impeachment issue was not an abuse of discretion.

## V. CONCLUSION

For the reasons discussed above, there is no abuse of discretion in the Superior Court's Order Denying Defendant's Motion for Judgment of Acquittal or in the Alternative, Motion for a New Trial or in the Order denying Defendant's Motion for a New Trial dated February 1, 2013. Therefore, Burke's convictions are affirmed.