**MICHAEL STANISLAS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2009-0059

Supreme Court of the Virgin Islands

May 24, 2011

BARBARA ARCHIBALD, ESQ., Law Offices of Karin A. Bentz, P.C., St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 24, 2011)

CABRET, J. On December 28, 2007 in St. John, two assailants, both armed, entered a bar where six men were playing cards. After demanding money and shooting one of the men, the gunmen fled the scene. One of the men produced his own gun and shot one of the assailants, while another chased the assailants from the bar. A third man sought out the police. When the police arrived, the men indicated that the assailants fled toward an adjacent business. When the police searched the indicated area, they found a person who was subsequently identified as Michael Stanislas suffering from gunshot wounds. Stanislas was charged with attempted murder, assault, possession of an unlicensed firearm, and multiple counts of robbery in a nine-count information. A jury convicted him on all counts. Stanislas challenges his conviction, arguing that it is not supported by substantial evidence, that the Superior Court erred in denying his motion for acquittal, that he did not receive a fair trial due to ineffective assistance of counsel, and that the proper remedy for these errors is a judgment of acquittal. For the reasons which follow, we affirm Stanislas' conviction.

## I. FACTS AND PROCEDURAL BACKGROUND

On December 28, 2007, six men were playing cards inside a St. John business. Two men, both wearing masks and carrying guns, entered the business and demanded money from the occupants. The gunmen told the six card players, Kevin Samuel, Shawn Claxton, Arthur Hercules, Yves Juste, Jerome Potter, and Lorenzo Liburd, to lie on the ground while the gunmen took their money and jewelry. One gunman, later identified as Michael Stanislas, held his gun on Samuel's head. As Samuel reached towards Stanislas' gun, Stanislas shot Samuel three times. After Samuel was shot, Claxton drew his own gun and fired at Stanislas.

Stanislas and his accomplice then fled the business. Claxton and Potter moved to the doorway, where they saw Stanislas, still holding his gun.

Claxton fired two more shots, which hit Stanislas in the shoulder and buttocks. Stanislas fell to the ground and began crawling toward an adjacent hotel. After seeing Stanislas fall, Claxton, along with Liburd, drove Samuel to a clinic for medical care. Potter observed Stanislas crawling away and searched outside the business for Stanislas' gun. Once Potter recovered the gun, he followed Stanislas toward the hotel. Outside the door to the business, Juste found articles of clothing left by the gunmen.

When the police arrived, Potter gave them the gun and helped them locate Stanislas. Claxton and Liburd drove Samuel to a clinic for medical care, while EMTs took Stanislas to the clinic. Once stabilized, Samuel and Stanislas were transported together to a hospital on St. Thomas. At no point during this ordeal did Samuel lose consciousness.

The police arrested Stanislas and charged him with attempted murder, assault and multiple counts of robbery. The Territorial Public Defender was appointed to represent Stanislas, but a conflict of interest arose and the court appointed attorney Ruth Ann Magnuson to represent Stanislas. Magnuson sought to withdraw from representing Stanislas, based on her inexperience with criminal matters and limited resources, but was not permitted to do so.

At trial, Stanislas faced nine charges: attempted murder, assault, carrying an unlicensed firearm during the commission of a crime of violence, and six counts of robbery. The prosecution called several of the victims to testify. Samuel testified that he and the other victims were playing cards when the gunmen arrived. He described getting shot and showed the jurors the scar on his head. While he said he did not see the faces of either gunmen, Samuel was able to describe the man who shot him as a "black African-American" male, approximately 5'8" or 5'9" tall. (J.A. 168.) Samuel identified the man who shot him as the man who was shot by Claxton. Samuel also identified Stanislas as his fellow passenger in the ambulance transport from St. John to St. Thomas.

Sean Claxton also testified at the trial. Like Samuel, Claxton stated that two gunmen entered the business demanding money. Claxton testified that when he heard two gunshots, he turned to see that Samuel had been shot in the head. In the commotion that followed, Claxton drew his own handgun and fired at the man who shot Samuel. Claxton testified that his shot hit the man in the groin. After Claxton fired, both assailants fled the building and Claxton followed them to the door. Claxton stated that the

man who shot Samuel began turning toward him with his gun raised and Claxton reacted by shooting him twice, once in the buttock and once in the shoulder. After verifying that Samuel's assailant was no longer a threat, Claxton took Samuel to get medical help. Claxton stated that he saw the man he shot crawling toward the adjacent hotel. Two of the other card players corroborated the testimony of Claxton and Saumel and one testified to discovering what he believed to be the gunmen's masks outside the door, and to seeing one of the gunmen limping toward the nearby hotel, holding his lower back.

Jerome Potter testified that two gunmen entered the business demanding money. Potter stated that the gunmen took his money and a gold chain. Potter testified that he was sitting next to Samuel, did not see him get shot, but heard the sound of the gunshots. When the gunmen fled the business, Potter saw Claxton fire his handgun, but did not see Claxton's shots hit anyone. Potter then saw a man limping toward the hotel. Potter found one of the gunmen's weapons, and chased the limping man toward the hotel, when Potter was stopped by police. After giving the gun to the police, Potter directed them toward the hotel, where the gunman he chased was "screaming out." (J.A. 370.)

The first law enforcement officer to arrive at the scene was directed to the nearby hotel by one of the victims, and there took Stanislas into custody. When Stanislas emerged from the hotel stairway, he had a "rag" in his hand, later connected by other evidence to a bloody black t-shirt tied in a knot that was recovered at the scene.

The prosecution also called the doctors that treated Stanislas' gunshot wounds. Medical testimony confirmed that Stanislas was treated for multiple gunshot wounds, the most severe of which involved a projectile that entered through the buttock and lodged inside the groin.

Finally, the prosecution called an expert witness to testify that the gunshot residue found on Stanislas' hands could have been deposited by firing a gun, being in close proximity to a firing gun, or coming into contact with a surface contaminated with gunshot residue. Following the close of the prosecution's case, Stanislas moved for a directed verdict on all counts, alleging that the prosecution failed to produce sufficient evidence. The Superior Court reserved its decision and allowed Stanislas to proceed with his defense.

In his defense, Stanislas called three character witnesses: his father, his employer, and Chrispen Rogers, a life-long friend of Stanislas. The

character witnesses testified that Stanislas was of good character, had a reputation for honesty, and was not a violent person. Additionally, Stanislas testified in his own defense. He stated that on the day of the shooting, he travelled alone from St. Thomas to St. John at 8:00 p.m. via ferry. Stanislas said he walked to a nearby bar, where he was relaxing when he saw a woman, identified only as Ms. Davis, who had previously invited him to attend church meetings at her house. Stanislas testified that around 9:00 p.m. on the night of the shooting, since he had no other plans, he got into Ms. Davis' car and went to her house for a church meeting.

Stanislas testified that he left a church meeting around 11:00 p.m. and was walking in the area of the robbery looking for something to eat as he returned to the ferry dock. He approached what he thought was a restaurant and heard several gunshots. Stanislas stated that before he could leave the scene, people rushed out from the restaurant, and someone shot him. Stanislas testified that he was shot three times: in the upper thigh, in the shoulder, and in the buttocks. He then crawled up a flight of stairs, where he waited until police arrived. He asserted that when police arrived, he left his hiding spot and called out to the officers, who ordered him to the ground and handcuffed him. He was treated at the scene and then transported to a clinic for further care.

Following the close of his defense, Stanislas renewed his motion for a directed verdict and the Superior Court again reserved its decision. The jury found Stanislas guilty on all counts, and four days later he filed a written motion for judgment of acquittal. In this motion, Stanislas argued that the evidence did not establish that Stanislas was one of the two gunmen that entered the business. Further, Stanislas asserted that even if the evidence was sufficient to establish that he was one of the gunmen, there was no substantial evidence establishing that the victims had been robbed. The Superior Court denied the motion. Based on his convictions, the Superior Court sentenced Stanislas to fifteen years of incarceration.

On appeal, Stanislas argues that the jury's verdict was not supported by substantial evidence, that the Superior Court erred in denying his motion for judgment of acquittal, that he was denied a fair trial due to ineffective assistance of counsel, and that a judgment of acquittal is the proper remedy for these alleged errors. For the reasons that follow, this Court affirms the judgment of the Superior Court and its denial of the motion for judgment of acquittal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the Superior Court's judgment pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."

An appellate court exercises plenary review over a trial court's grant or denial of a motion for acquittal based on the sufficiency of the evidence, and applies the same standard as the trial court. *See Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009) (citing *United States v. Silveus*, 542 F.3d 993, 1002, 50 V.I. 1101 (3d Cir. 2008)). In reviewing the Superior Court's denial of Stanislas' Motion for Judgment of Acquittal based on sufficiency of the evidence, "we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People. We will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009) (citations and quotation marks omitted).

██ Stanislas did not raise an ineffective assistance of counsel claim prior to filing the current appeal. "Ordinarily, a claim of ineffective assistance of trial counsel is not appropriately reviewed for the first time on direct appeal . . . because the necessary facts about counsel's representation of the defendant have not been developed." *Rivera v. Gov't of the V.I.*, 981 F. Supp. 893, 900, 37 V.I. 68 (D.V.I. App. Div. 1997). However, when an adequate record exists, the claim may be reviewed on direct appeal. *Id.*; *see also Corraspe v. People*, 53 V.I. 470, 486 (V.I. 2010). The record before this Court is sufficient to allow review of the trial counsel's representation. In reviewing a claim of ineffective assistance on a direct appeal, "we employ the test articulated by the Supreme Court in *Hill* . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness [and] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Corraspe*, 53 V.I. at 479 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)) (internal citation omitted).

## III. DISCUSSION

### A. Sufficiency of Evidence

■ When an appellant challenges a conviction based on the sufficiency of evidence presented at trial, "it is well established that . . . all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) (quoting *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation marks omitted)). Likewise, this Court "must credit all available inferences" drawn from both direct and circumstantial evidence "in favor of the government." *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004). The evidence "does not need to be inconsistent with every conclusion save that of guilt in order to sustain the verdict." *Latalladi*, 51 V.I. at 145 (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957)) (quotation marks omitted). This standard requires an appellant to overcome a very heavy burden before a conviction will be overturned. *Id.*

We find that Stanislas fails to meet this burden. According to Stanislas, the prosecution's evidence was insufficient because "the jury made critical inferences from established facts that did not lead logically and convincingly to those inferences." (Appellant's Br. 23.) Specifically, Stanislas contends that because no one maintained an unbroken observation of the gunmen from the time they exited the business until Claxton shot Stanislas, no inference can be drawn that Stanislas was one of the gunmen. This gap in the observation, argues Stanislas, renders unreliable both Claxton's and Potter's testimony that they followed the gunmen from inside the business to the door, where Claxton shot one of the gunmen. Stanislas also relies on inconsistencies in descriptions of the clothing worn by the gunmen and the clothing Stanislas was wearing when he was arrested. Additionally, Stanislas asserts that the small amounts of gunshot residue found on his hands are not consistent with the amount of residue that normally would be deposited on someone firing a handgun. Finally, Stanislas points to testimony that the gunman who shot Samuel was shot in the groin, while Stanislas only suffered gunshots to the shoulder, upper thigh, and buttocks.

■ Although Stanislas identifies evidence somewhat inconsistent with the conclusions of the jury, total consistency of all evidence with the jury's verdict is not a requirement for a conviction to be upheld. *See*

*Stevens*, 52 V.I. at 308 (stating that "[e]ven if it were true, as asserted by the [appellant], that much of the People's evidence was laden with inconsistencies, the uncorroborated testimony of the victim would have been sufficient to sustain the convictions.").

■ The inference Stanislas challenges, that he was the gunman that shot Samuel, is supported by substantial evidence. Two witnesses, Potter and Claxton, testified that they followed the gunmen from the interior of the business. This pursuit was only halted long enough for Claxton to "peep" outside to make sure the robbers were not lying in wait. (J.A. 245, 377.) Both Potter and Claxton testified that the man Claxton shot inside the business premises was the same man Claxton shot outside. It was within the province of the jury to determine how this observational gap affected the weight and credibility of the victims' testimony.

Evidence other than the witness identifications provides additional support to the jury's verdict. Potter testified that he saw Claxton fire his gun at one of the gunmen. Claxton testified that he shot Samuel's assailant in the groin, shoulder, and buttocks. Stanislas testified that he was shot in the shoulder, upper thigh, and the buttocks. Likewise, a surgeon testified that he removed a bullet from Stanislas' groin several days after the shooting. Stanislas asserts that because he was not shot in the groin, he could not have been the gunman inside business. (Appellant's Br. 27.) Given the close anatomical proximity between the upper thigh and the groin, a rational jury could infer that Stanislas was the gunman based on his wounds.

After Claxton shot Samuel's assailant, Potter followed the assailant, recovered his gun, and chased him to the nearby hotel. Stanislas was taken into custody after he emerged from the hotel. Gunshot residue was found on Stanislas' hands, consistent with discharging a firearm. Several victims testified that the assailants were wearing black t-shirts over their faces when they entered business. A rolled up black t-shirt was found outside the door, police found Stanislas holding what appeared to be a rag when they arrested him, and a black, knotted t-shirt was introduced into evidence at trial. Based on all the evidence, a rational trier of fact could infer that Stanislas and the gunman that shot Samuel are the same person. The inconsistent testimony regarding clothing, alternate theories about gunshot residue, and questions about the credibility of testimony are the types of issues well within the province of the jury to resolve. Claxton's and Potter's testimony, along with the injuries Stanislas received, the

gunshot residue, and Stanislas' location and circumstances when apprehended provide a sufficient basis for the jury's verdict. On appeal, this Court does not engage in weighing evidence or determining witness credibility, and any conflicts in the evidence are resolved in favor of upholding the conviction. *See Smith*, 51 V.I. at 401. The jury resolved these issues and reached its conclusion that Stanislas was the gunman that shot Samuel. As discussed above, there is substantial evidence to support that conclusion and thus Stanislas' conviction. Therefore, the Superior Court did not err in denying Stanislas' motion for judgment of acquittal.

## B. Ineffective Assistance of Counsel

In order to successfully raise the issue of ineffective assistance of counsel, Stanislas must prove that his counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome in the proceeding. *Strickland v. Washington*, 466 U.S. 668, 694, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Corraspe*, 53 V.I. at 485. In making the claim, an appellant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Furthermore, "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006). "In order to show that counsel's performance was unreasonable," as is required to establish ineffective assistance of counsel under *Strickland*, the defendant "must establish that no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). Thus, "[t]actical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel." *Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) (quoting *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995)). Moreover, "[t]actical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) (quotation marks omitted).

Stanislas argues that his trial counsel "failed in crafting a theory of the case which would have informed every witness examination, her opening

statement[,] and [her] closing argument." (Appellant's Br. 28.) During opening statements, Stanislas' attorney identified four themes: first, that Stanislas had never been in any type of trouble before this incident; second, that the case was about being in the wrong place at the wrong time; third, that the events surrounding the shooting were so confusing as to render the victims' testimony inconclusive; and fourth, that the police investigation was deficient. (J.A. 158-61.)

Counsel developed the first theme through direct examination of Stanislas' father, an employer, and a friend. Stanislas himself testified in support of the "wrong place, wrong time" theme. In cross-examining the prosecution's witnesses, counsel was able to develop the issues of confusing testimony and deficient investigation. During closing arguments, defense counsel reiterated these four themes.

■ Defense counsel clearly stated a theory of the case during the opening statement which was developed throughout the trial and summarized in the closing argument. Although Stanislas may now disagree with that theory, nothing in his appeal alleges how that theory or any other aspect of his representation at trial fell below an objective standard of reasonableness or otherwise prejudiced the outcome of his trial.

■ To the extent Stanislas claims that his trial counsel's financial constraints and disaffection with his cause led to ineffective assistance of counsel at trial, Stanislas has failed to allege any act or omission by trial counsel which fell below an objective standard of reasonableness or prejudiced Stanislas by affecting the results of his trial. Accordingly, Stanislas has not demonstrated that he received ineffective assistance of counsel at trial.

## IV. CONCLUSION

Stanislas failed to show that his conviction was not supported by substantial evidence, that the Superior Court erred in denying his motion for judgment of acquittal, that he received ineffective assistance of counsel at trial, or that he is otherwise entitled to a judgment of acquittal. For these reasons, the Superior Court's order denying Stanislas' motion for judgment of acquittal and the Superior Court's judgment are affirmed.