**MARIO GUMBS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2014-0069

Supreme Court of the Virgin Islands

April 26, 2016

494

ALEXANDER GOLUBITSKY, ESQ., Marjorie Rawls Roberts, P.C., St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., PAMELA R. TEPPER, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 26, 2016)

SWAN, *Associate Justice.* Appellant Mario Gumbs (hereinafter "Gumbs") appeals from the Virgin Islands Superior Court's October 29, 2014 judgment and commitment,[1] which adjudged him guilty in a two count information, charging possession of cocaine with intent to distribute in violation of 19 V.I.C. § 604(a)(1) and simple possession of marijuana in violation of 19 V.I.C. § 607(a). For the reasons elucidated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On October 7, 2013, a multiple agency task force, consisting of the Virgin Islands Police Department (hereinafter "VIPD"), the Drug Enforcement Agency (hereinafter "DEA"), the Federal Bureau of Investigation (hereinafter "FBI") and other federal agencies conducted a sting operation at the Lake's Chicken Fry restaurant (hereinafter "Lake's") in Smith Bay, St. Thomas. Armed and wearing raid gear that identified each agency, the officers arrived at Lake's, parked their cars and formed a semi-circle around the front of the establishment to cordon off the area. While some officers secured the immediate area, another group was inside the cordoned off area conducting an investigation. During their investigation, the agents had unholstered their weapons and verbally instructed everyone in the area to keep their hands visible.

Gumbs, who was hearing impaired, entered the cordoned off area wearing earphones connected to his iPod, a baseball cap, dark sunglasses, jeans and a t-shirt. Upon seeing Gumbs, Agent Richard Dominguez (hereinafter "Agent Dominguez") of the VIPD and other agents at the scene yelled at Gumbs to stop and remove his hands from his pockets. It

---

[1] The judgment and commitment was signed on October 29, 2014 and entered on October 30, 2014.

appeared that Gumbs ignored all commands and kept walking towards the agents who were conducting an investigation in the center of the semi-circle.[2] Consequently, Agent Dominguez intercepted Gumbs and took one hand out of Gumbs' pocket and placed it on top of Gumbs' head. Gumbs followed by putting his other hand on top of his head.

While Agent Dominguez was performing a pat-down search of Gumbs for weapons, he observed a big, brown bag with a green leafy substance protruding from Gumbs' front left pocket, which, based on his skills and experience as a police officer, he recognized as marijuana. Agent Dominguez concluded the pat down search, removed the bag containing the green leafy substance from Gumbs' front left pocket, and arrested him. Upon a further examination of the contents of this bag, Agent Dominguez found 32 additional clear plastic baggies, 28 of which contained a rock-like white substance, and 4 of which contained a white powdery substance.

Agent Dominguez transported Gumbs and the seized bag contents to the police station in Subbase for processing. The events of what happened at the police station in Subbase are disputed by the parties. Agent Dominguez claims that Gumbs was advised of his *Miranda* rights and opted to waive his constitutional rights and gave a statement. According to Agent Dominguez, in the interview he conducted together with Agent Andrew Niermeier (hereinafter "Agent Niermeier"), Gumbs stated that in 2004 he found a substantial quantity of cocaine on St. John, and since he was unemployed and unable to find employment but needed money, he would take portions of the cocaine and sell it whenever he needed money. Agent Dominguez claims that Gumbs did not reduce this statement to writing. However, Gumbs disputed that he informed the officers that he had sold drugs or had contraband in his possession when he was arrested.

Agent Joseph Reiger (hereinafter "Agent Reiger"), a special agent for the DEA, who was also present at the scene, took custody of the brown bag and its contents from Agent Dominguez at the police station in Subbase. Agent Reiger processed and conducted field tests on the contents of the baggies retrieved from Gumbs, which tested positive for cocaine and marijuana. Agent Reiger then transferred the brown bag, the baggies,

---

[2] Although the earphones present in Gumbs' ear may have compounded his hearing impairment, nothing in the record suggests that he could not see or that his line of vision of the officers was obstructed.

and all of their respective contents to Agent Niermeier, who stored them overnight between October 7 and October 8, 2013. Agent Reiger then forwarded the brown bag, the baggies, and all of their respective contents, which were labeled as "documents," via express courier service to the Drug Enforcement Agency Southeastern Laboratory (hereinafter "DEA lab") in Miami, Florida. An unidentified evidence technician at the DEA lab received the brown bag, the baggies, and all of their respective contents on or about October 9, 2013, before transferring it for further testing. Agent Tyrone Shire (hereinafter "Agent Shire"), a DEA forensic chemist, performed the test analysis of the contents of the brown bag and the baggies, and confirmed that it was cocaine and marijuana. The DEA lab then returned the brown bag, the baggies and all their respective contents directly to Agent Dominguez in St. Thomas.

Before trial, Gumbs made a motion to suppress the contraband which the Superior Court denied. On the eve of trial, Gumbs' counsel filed a motion to withdraw as counsel. After hearing arguments from both counsel and Gumbs, the Superior Court denied the motion. Gumbs' trial commenced on September 17, 2014 and ended that same day with verdicts of guilty on all charges.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." "A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011) (citing *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008)). It is well-established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013); *see also Percival v. People*, 62 V.I. 477, 483 (V.I. 2015). The October 29, 2014 judgment and commitment ended the criminal proceedings against Gumbs and served as the final order in the case. Accordingly, we have jurisdiction over this appeal.

## III. ISSUES AND STANDARD OF REVIEW

On appeal, Gumbs contends that (A) the Superior Court erred in denying his Rule 29 motion for judgment of acquittal on the charge of

simple possession of marijuana and possession of cocaine with intent to distribute because there was insufficient evidence to convict him on either charge; (B) the Superior Court violated his Sixth Amendment right to effective assistance of counsel when it denied his counsel's motion to withdraw; (C) the Superior Court violated his Fourth Amendment rights when it denied his motion to suppress the contraband seized from him when he was arrested; and (D) the chemical analysis report should have been excluded from the proceedings because the People violated his rights under Federal Rule of Criminal Procedure 16(d) by withholding the report until after the discovery deadline.

We exercise plenary review over sufficiency of the evidence claims, and we interpret the evidence in the light most favorable to the People. *Simmonds v. People*, 59 V.I. 480, 485-86 (V.I. 2013); *see also Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). "The effectiveness of counsel involves mixed questions of law and fact, so de novo review is applied." *Morton v. People*, 59 V.I. 660, 665-66 (V.I. 2013) (citing *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994); *United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir. 2005)). We review the Superior Court's factual findings for clear error and exercise plenary review over its legal determinations in its decision on a motion to suppress. *James v. People*, 60 V.I. 311, 317 (V.I. 2013) (citing *Blyden v. People*, 53 V.I. 637, 646-47 (V.I. 2010)); *see also Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010) (citing *United States v. Shabazz*, 564 F.3d 280, 286 n.4 (3rd Cir. 2009)). Finally, we review the Superior Court's decision to admit evidence for abuse of discretion. *Francis v. People*, 56 V.I. 370, 379 (V.I. 2012).

## IV. DISCUSSION

### A. A Rational Jury Could Reasonably Conclude That There Was Sufficient Evidence to Convict Gumbs on the Charge of Simple Possession of Marijuana.

Gumbs argues on appeal that there is insufficient evidence to convict him of simple possession of marijuana. "When reviewing a challenge to the sufficiency of the evidence leading to a conviction, the standard of review is whether there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict." *McIntosh v. People*, 57 V.I. 669, 678 (V.I. 2012) (citation and internal quotation marks omitted); *Coleman v. Johnson*, 132 S. Ct. 2060,

2062, 182 L. Ed. 2d 978 (2012) ("[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "In making our determination, we do not weigh the evidence or substitute our credibility determinations for that of the jury[ ]." *Brathwaite v. People*, 60 V.I. 419, 426 (V.I. 2014) (citing *Ramirez v. People*, 56 V.I. 409, 417 (V.I. 2012); *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008)); *United States v. White*, 698 F.3d 1005, 1013 (7th Cir. 2012); *United States v. Santos-Rivera*, 726 F.3d 17, 23 (1st Cir. 2013). "We must affirm a jury's verdict as long as substantial evidence was presented at trial to allow a rational trier of fact to convict when the evidence is viewed in a light most favorable to the People." *James v. People*, 60 V.I. 311, 318 (V.I. 2013) (citing *Todmann v. People*, 60 V.I. 926, 934 (V.I. 2012); *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009); *United States v. Wright*, 665 F.3d 560, 567 (3d Cir. 2012)). "An appellant[, therefore,] has a very heavy burden in advancing an insufficiency of the evidence claim." *James*, 60 V.I. at 318 (citing *Latalladi*, 51 V.I. at 145).

■ Title 19, section 607(a) of the Virgin Islands Code states that "it shall be unlawful for any person knowingly or intentionally to possess a controlled substance . . . unless such substance . . . was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this chapter." The People were required to prove that Gumbs knowingly and intentionally possessed a controlled substance, to wit: marijuana. "A person who knowingly has direct physical control over a thing at a given time is . . . in actual possession of it." *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991) (quoting BLACK'S LAW DICTIONARY 1047 (5th ed. 1979)); *see also Maryland v. Pringle*, 540 U.S. 366, 372, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) (holding that the occupants of a car stopped for speeding at 3:16 a.m. had knowledge of and exercised dominion and control over $763 found in the glove compartment and the cocaine found behind the back-seat armrest). Additionally, marijuana is listed in Schedule I as a controlled substance. 19 V.I.C. § 595(c).

■ Here, Agent Dominguez testified that he removed a big brown bag containing a green leafy substance from Gumbs' left front pocket while he was performing a pat down for weapons. Agent Dominguez also testified that, based on his skills and training as a police officer with the VIPD for seven years and with the DEA task force for two years, he recognized the green leafy substance inside the big brown bag in Gumbs' pocket as marijuana. Agent Reiger, a DEA special agent, testified that he took custody of the seized contents of the brown bag from Agent Dominguez and conducted a field test, which confirmed the green leafy substance to be marijuana. Agent Reiger then sent the brown bag's contents to the DEA lab, where Agent Shire, a forensic chemist, conducted further tests which confirmed that the green leafy substance was marijuana. Consequently, there was substantial evidence for a rational jury to reasonably conclude beyond a reasonable doubt that Gumbs knowingly and intentionally possessed marijuana.

## B. There Was Sufficient Evidence to Convict Gumbs on the Charge of Possession of Cocaine With the Intent to Distribute.

■ Gumbs argues on appeal that the Superior Court erred in not granting his motion for judgment of acquittal because there was insufficient evidence to convict him of possession of cocaine with intent to distribute. In assessing whether there is sufficient evidence to support his conviction of possession of cocaine with intent to distribute, this Court "must determine whether the People presented substantial evidence that [Gumbs] knowingly and intentionally possessed a controlled substance and that he did so with the intent to distribute." *McIntosh*, 57 V.I. at 679 (citing *United States v. Lacy*, 446 F.3d 448, 454 (3d Cir. 2012). Moreover, "[a] jury could infer that [Gumbs] intended to distribute [the cocaine found in his possession], based on the theory that such an amount exceeds what would typically be possessed for personal use." *Id.* at 681 (citations omitted).

■ Title 19, section 604(a)(1) of the Virgin Islands Code states in relevant part that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 19 V.I.C. § 604(a)(1). There is also sufficient evidence from which a jury could rationally conclude that Gumbs intended to distribute cocaine. Possession is defined as "the fact of having or holding property in one's

power; the exercise or dominion over property." BLACK'S LAW DICTIONARY 1281 (9th ed. 2009), or as "the act, fact, or condition of having control of something . . . ." MERRIAM-WEBSTER'S DICTIONARY OF LAW 369 (Collector's ed. 1996). Cocaine is a controlled substance as defined in title 19, section 595 of the Virgin Islands Code. Intent to distribute "may be established by circumstantial evidence." *McIntosh*, 57 V.I. at 680 (citing *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002)).

◼ The form and the amount of crack cocaine that Agent Dominguez confiscated from Gumbs are themselves evidence of intent to distribute. Agent Dominguez testified that upon examining the big brown bag suspected of containing the marijuana that he confiscated from Gumbs, he found 28 clear plastic baggies containing a rock-like white substance and 4 clear plastic baggies containing a white, powdery substance, at least some of which tested positive for cocaine. Additionally, Agent Dominguez and Agent Niermeier testified that Gumbs told them that he had previously found and sold cocaine for $5 and $10 when he had no money. Viewing the evidence in the light most favorable to the People, a rational jury could reasonably conclude that 32 baggies of crack cocaine were not for personal consumption but instead are indicative of an intent to distribute. *See, e.g.*, *United States v. Jones*, 81 Fed. Appx. 45, 49 (6th Cir. 2003) (concluding that cocaine packaged in a knotted plastic bag was consistent with intent to distribute rather than retained for personal use); *United States v. Gamble*, 388 F.3d 74, 77 (2d Cir. 2004) (concluding that the presence of twenty-six small pink zip-lock bags holding 1.7 grams of cocaine base (with purity of 79 percent) and hundreds of zip-lock bags like those in which crack cocaine was packaged, in addition to other evidence in the case, was sufficient to establish intent to distribute); *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1095-96 (5th Cir. 1991) (intent may be inferred from drug quantity, purity and value (citing *United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986)); *United States v. Onick*, 889 F.2d 1425, 1431 (5th Cir. 1989) (finding inference of intent from presence of small amount of drugs and drug paraphernalia); *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992) (finding "distribution paraphernalia, large quantities of cash, or the value and quantity of the substance" probative of intent (citations omitted)).

## C. A Reasonable Jury Could Conclude That the Evidence Seized From Gumbs was the Same Property Introduced at Trial Despite the People Mislabeling the Envelope and There Being an Unidentified Person as the Custodian.

In further support of his argument that there is insufficient evidence to convict him, Gumbs argued that there were impermissible breaks in the chain of custody of the contraband alleged to belong to him and that such breaks in the chain of custody would prevent a reasonable jury from determining that the contraband that was subjected to chemical analysis and later admitted into evidence was the same contraband seized from him. Specifically, Gumbs argued that during the 345 days between his arrest and trial, the evidence of contraband used to convict him was held for approximately 335 of those days by persons identified only by title. Additionally, Gumbs argued that the VIPD and the DEA intentionally mislabeled the envelope used to transport the property seized from Gumbs which violated federal law and showed a clear intent by the government to conceal the contents of the package. Gumbs argued that because the mislabeled envelope was received by an unidentified person two days later in Miami and held by that individual or other unidentified individuals for approximately seven months a jury could not reasonably conclude that the contraband was the same evidence introduced at trial.

■ A chain of custody is defined as "[t]he movement and location of real evidence, and the history of those persons who had it in their custody, from the time it is obtained to the time it is presented in court." BLACK'S LAW DICTIONARY 260 (9th ed. 2009). As a rule, it derived from the principle that real evidence must be authenticated prior to its admission into evidence. *See* FED. R. EVID. 901. The purpose of requiring proof of a chain of custody of physical evidence is to establish that an item is what it purports to be and to ensure that evidence is not lost, adulterated or changed pending trial on the merits of a case. *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982). "When proffered evidence has distinctive characteristics which make it unique, readily identifiable, and relatively resistant to change, its foundation for admission may be established simply by testimony that the evidence is what its proponent claims it to be." *United States v. Mills*, 194 F.3d 1108, 1111-12 (10th Cir. 1999) (citations omitted). But "[w]hen the evidence is not readily identifiable and is susceptible to tampering or contamination . . . the

government must show a chain of custody of the item with sufficient completeness to render it improbable that the original item has been exchanged with another or been contaminated or tampered with." *United States v. Thomas*, 749 F.3d 1302, 1310 (10th Cir. 2014) (quoting *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989)) (internal quotation marks omitted); *see United States v. Wilson*, 565 F.3d 1059, 1066 (8th Cir. 2009); *United States v. Lothridge*, 332 F.3d 502, 504 (8th Cir. 2003).

During the trial, Agents Dominguez, Reiger, Shire and Niermeier testified how the contraband came into their possession, the process of preparing it to be sent to the DEA lab for testing, the detailed procedures for numbering and verifying the evidence, the chain of command verification of the procedures, the return procedures from the chemist to the evidence technician and the return procedures to St. Thomas for trial. Proof of "chain of custody need not be perfect for the evidence to be admissible." *United States v. Brooks*, 727 F.3d 1291, 1299 (10th Cir. 2007) (quoting *United States v. Yeley-Davis*, 632 F.3d 673, 683 (10th Cir. 2011)). And, as the offering party, the People in this case, are not always required to produce every individual who came into contact with an item of evidence. *See United States v. Rose*, 587 F.3d 695, 701 (5th Cir. 2009). Additionally, the People do not have to "rule out every conceivable chance that somehow the identity or character of the evidence underwent a change." *United States v. Jones*, 687 F.2d 1265, 1267 (8th Cir.1982) (quoting *United States v. Lane*, 591 F.2d 961, 962, 192 U.S. App. D.C. 352 (D.C. Cir. 1979)). Because "[i]t is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that the reasonable probability is that the evidence has not been altered in any material respect," *Rabovsky v. Commonwealth*, 973 S.W.2d 6, 8, 45 3 Ky. L. Summary 21 (1989) (quoting *United States v. Cardenas*, 864 F.2d 1528, 1532 (10th Cir. 1989) (internal quotation marks omitted) and because nothing in the record indicates that the evidence was lost, adulterated, or changed pending trial, we find Gumbs' argument specious.

"Merely raising the possibility of tampering is insufficient to render evidence inadmissible." *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) (citing *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994)). Importantly, a break in the chain of custody usually goes to the weight of the evidence and not its admissibility. *Browne v. People*, 56 V.I.

207, 221 n.12 (V.I. 2012) (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2008); *United States v. Dent*, 149 F.3d 180, 189 (3d Cir. 1998)). If the evidence is properly authenticated and if there is reasonable probability that the evidence is what it is purported to be, "[a] possible defect in the chain of custody for a certain piece of evidence factors into the weight given to the evidence rather than its admissibility." *United States v. Scharon*, 187 F.3d 17, 22 (1st Cir. 1999) (citing *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir. 1998)); *see also Yeley-Davis*, 632 F.3d at 683 (citing *United States v. Smith*, 534 F.3d 1211, 1225 (10th Cir. 2008)). In other words, the jury determines the weight it will give the evidence if they find there is a break in the chain of custody. "Once admitted, the jury evaluates the defect and, based on its evaluation, may accept or disregard the evidence." *Yeley-Davis*, 632 F.3d at 683; *see also United States v. Huggins*, 191 F.3d 532, 539 (4th Cir. 1999) (gaps in chain of custody caused by theft of marijuana from state office adequately addressed by testimony of perpetrator and agent who later found marijuana in original container). Here, the People's evidence regarding the chain of custody was sufficient for the jury to reasonably conclude that the contraband was the same contraband that was confiscated from Gumbs and subsequently offered into evidence at trial especially because where items have been in official custody and there is no affirmative evidence of tampering, there is a presumption that public officers have discharged their duties properly to preserve the items' original condition. *United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014) (citing *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008)); *see also United States v. Benoit*, 730 F.3d 280, 288-89, 59 V.I. 1145 (3rd Cir. 2013) (citing *Dent*, 149 F.3d at 188-89); *United States v. Prieto*, 549 F.3d 513, 524-25 (7th Cir. 2008) (citing *United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir. 1994)).

## D. Gumbs' Sixth Amendment Rights Were Not Violated.

Gumbs argues on appeal that his Sixth Amendment rights to effective assistance of counsel was violated because the Superior Court judge failed to grant his counsel's motion to withdraw. Specifically, Gumbs alleged a conflict of interest, a lack of cooperation, and a breakdown in communication between himself and his counsel. The Superior Court heard the arguments of all the parties, including Gumbs, and concluded that the disagreement between Gumbs and his counsel was neither a

conflict of interest nor a constitutional violation requiring postponement of the trial after the jury had already been selected. Additionally, the Superior Court found that Gumbs' attorney did not violate any of the Model Rules of Professional Conduct; therefore, his motion to withdraw was denied.

▮ The Sixth Amendment guarantees the right to effective assistance of counsel in criminal proceedings. *Morton v. People*, 59 V.I. 660, 669 (V.I. 2013); *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (per curiam); *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (Sixth Amendment right to counsel is right to effective counsel (citation omitted)).

> Ordinarily, a claim of ineffective assistance of trial counsel is not appropriately reviewed for the first time on direct appeal . . . because the necessary facts about counsel's representation of the defendant have not been developed. However, when an adequate record exists, the claim may be reviewed on direct appeal. The record before this Court is sufficient to allow review of the trial counsel's representation. In reviewing a claim of ineffective assistance on a direct appeal, we employ the test articulated by the Supreme Court in *Hill* [*v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). T]he defendant must show that counsel's representation fell below an objective standard of reasonableness [and] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Stanislas v. People*, 55 V.I. 485, 491 (V.I. 2011) (internal quotation marks and citations omitted); *Corraspe v. People*, 53 V.I. 470, 479, 486 (V.I. 2010); *accord Blyden v. Gov't of the V.I.*, 64 V.I. 367, 380-381 (V.I. 2016).

▮ To prove ineffective assistance of counsel, Gumbs must: (1) "identify acts or omissions of counsel that are alleged to have been outside the wide range of reasonable professional judgment and competent assistance" and (2) "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morton*, 59 V.I. at 669 (citing *Strickland*, 466 U.S. at 690, 694).

Here, Gumbs failed to provide sufficient evidence to support his claim. Gumbs identifies no specific acts or omission of his counsel's representation of him that "fell below an objective standard of reasonableness and that counsel's performance prejudiced [him] resulting in an unreliable or fundamentally unfair outcome in the proceeding." *Powell v. People*, 59 V.I. 444, 453 (V.I. 2013) (quoting *Stanislas*, 55 V.I. at 494 and citing *Corraspe*, 53 V.I. at 479-80). "Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are so serious that he no longer functions as counsel, and prejudicial, meaning his errors deprive the defendant of a fair trial." *Maryland v. Kulbicki*, 577 U.S. ___, ___, 136 S. Ct. 2, 3, 193 L. Ed. 2d 1 (2015) (citation and internal quotation marks omitted). Ironically, Gumbs' attorney's performance in this case rebuts Gumbs' argument, rendering it unfounded and unavailing. For example, our review of the record confirms the Superior Court's conclusion that that Gumbs' attorney "filed appropriate pretrial motions, including a motion to suppress, and presented an effective and vigorous defense at . . . trial." (J.A. 528). Importantly, the Sixth Amendment does not guarantee a "meaningful relationship between an accused and his counsel," *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) (internal quotation marks omitted), only that the attorney will be effective and free of any actual conflicts — which occurs when an attorney represents a directly conflicting interest. *See also Strickland*, 466 U.S. at 692 (noting that the Sixth Amendment right to effective assistance of counsel in criminal matters may be compromised "when counsel is burdened by an actual conflict of interest . . . [in which] counsel breaches the duty of loyalty . . . .") Gumbs may have filed a complaint with the Chief Public Defender regarding his attorney's performance, but without proof that his attorney "actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance [of counsel]." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (citing *Glasser v. United States*, 315 U.S. 60, 72-75, 62 S. Ct. 457, 86 L. Ed. 680 (1942)).

## E. Gumbs' Fourth Amendment Rights Were Not Violated.

Gumbs argues that the unwarranted seizure of the property belonging to him was not justified under the plain view doctrine; therefore, the motion to suppress the marijuana and cocaine should have been granted.

The pivotal issue here is whether Gumbs' Fourth Amendment rights were violated.

▮▮▮▮▮ The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Simmonds v. People*, 53 V.I. at 555.[3] Accordingly, warrantless searches are constitutionally invalid — subject to well-established exceptions to the warrant requirement. *Browne v. People*, 56 V.I. 207, 217 (V.I. 2012). Two such exceptions are the *"Terry"* stop and the "plain view" doctrines. *Terry* holds that:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Terry* further holds that:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others . . . it would . . . be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id.* at 24. Additionally, an officer may "make a warrantless seizure of any item that he or she has viewed from a place or position in which he or she was lawfully entitled to be, provided it is immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure." *Thomas v. People*, 63 V.I. 595, 606 n.4 (citing *Texas v. Brown*,

---

[3] "The Fourth Amendment of the United States Constitution, which protects persons, houses, papers, and effects, against unreasonable searches and seizures, is made applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954." *Thomas v. People*, 63 V.I. 595, 605 n.3 (citing 48 U.S.C. § 1561).

460 U.S. 730, 741, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)). Therefore, an officer may seize potential evidence in plain view when conducting an arrest or executing a search warrant or making a lawful warrantless search. *See Texas v. Brown*, 460 U.S. 730, 739, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983). As the Supreme Court stated, "if, while conducting a legitimate *Terry* search . . . the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) (quoting *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983) and citing *Sibron v. New York*, 392 U.S. 40, 69-70, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) (White, J. concurring); *id.* at 79 (Harlan, J., concurring in result)). The Court in *Dickerson* also cited *United States v Hensley*, 469 U.S. 221, 235, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) as "upholding plain-view seizure in the context of a *Terry* stop." 508 U.S. at 374-75.

Here, the agents were conducting a sting operation in a public area very close to a highly traveled street with the understanding that armed and dangerous people may be present in the area. While the agents were conducting their investigation, Gumbs walked through the cordoned off area and was oblivious to the agents' vociferous and strident commands to stop and to take his hands out of his pockets. Additionally, the agents were not aware of Gumbs' intention when he invaded the cordoned off area, oblivious to their commands and partially disguised wearing his hat and sunglasses with his hands in his pockets. Accordingly, the Superior Court was correct in finding that Agent Dominguez conducted a valid *Terry* stop to ensure that Gumbs had no weapons on him.

Because Agent Dominguez conducted a valid *Terry* stop, the plain view exception allowed him to seize the marijuana in the brown bag in Gumbs' front left pocket when it became exposed while he conducted a pat-down. *See Thomas*, at 606 n.4. Importantly, Agent Dominguez was in a public area outside a business establishment where he had an absolute right to be when he observed Gumbs' big brown bag containing material that, based on prior experience and training, he suspected was marijuana in plain view. Accordingly, the Superior Court did not err in denying Gumbs' motion to suppress the contraband found on him.

## F. The Superior Court Did Not Err In Admitting The Chemical Analysis Reports.

Pursuant to Rule 16(d) of the Federal Rules of Criminal Procedure, Gumbs argues that the test results of the contraband should be excluded because the People provided this information after the scheduled close of discovery and as a result of this untimely disclosure, he could not adequately prepare for trial. In response, the People argue that the DEA lab was responsible for the delay and that the delay did not result in any prejudice to Gumbs. The Superior Court correctly found that the People were obligated to disclose the chemical analysis report during discovery under Rule 16(a)(1)(F). Nevertheless, under Rule 16(d), the Superior Court has discretion to fashion an appropriate remedy if required information is not timely produced. Here, the Superior Court found that the analysis by the DEA lab was a confirmation of the field test that was done on St. Thomas, which was initially provided to Gumbs in discovery.

Rule 16 of the Federal Rules of Criminal Procedure provides that the trial court can provide protective relief, including denial, restriction or deferral of discovery or inspection, and even in the face of violation it may select an appropriate response:

1. *Protective and Modifying Orders.* At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

2. *Failure to Comply.* If a party fails to comply with this rule, the court may:

   (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

   (B) grant a continuance;

   (C) prohibit that party from introducing the undisclosed evidence; or

   (D) enter any other order that is just under the circumstances.

FED. R. CRIM. P. 16(d).

■ Additionally, this Court has enumerated additional factors that the Superior Court should use as a guide in determining an appropriate resolution for a discovery violation. The Superior Court should balance three factors in determining which of the following alternatives, if any, it should take to address a discovery violation by the government, which are:

> (1) The reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

*People v. Rodriguez*, S. Ct. Crim. No. 2009-0028, 2010 V.I. Supreme LEXIS 15, at *12 (V.I. Apr. 14, 2010) (unpublished) (quoting *United States v. Martinez*, 455 F.3d 1127, 1130 (10th Cir. 2006)); *see also Williams v. People*, 59 V.I. 1024, 1037 (V.I. 2013) (quoting and applying *Rodriguez*).

■ The Superior Court was correct in its determination that the People should have disclosed the chemical analysis report during discovery, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Further, in conducting the required analysis under Rule 16(d), the Superior Court was correct in finding that there was no evidence that the People operated in bad faith, that any prejudice to Gumbs would be cured by a continuance, and that any prejudice to Gumbs was minimal because the chemical analysis report received from the DEA lab only confirmed the field test results performed in St. Thomas, which were already made available to Gumbs. Accordingly, because the exclusion of relevant evidence is an extreme sanction, *Rodriguez*, 2010 V.I. Supreme LEXIS 15, at *20, and the Superior Court was correct in granting a continuance of the trial, we hold that the Superior Court did not abuse its discretion when it admitted the evidence after opposing counsel was given adequate time to review it.

### V. CONCLUSION

For the reasons elucidated above, the October 29, 2014 judgment and commitment of the Superior Court is AFFIRMED.